UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HALLOCKSHANNON, PC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CITIZENS & NORTHERN CORP.; ) <br> CITIZENS & NORTHERN BANK; ) <br> FNCB BANCORP, INC.; ) <br> FIRST NATIONAL COMMUNITY BANK; ) <br> F.N.B. CORP; ) <br> FIRST NATIONAL BANK OF PENNSYLVANIA; ) <br> HONAT BANCORP; ) <br> HONESDALE NATIONAL BANK; ) <br> PEOPLES FINANCIAL SERVICES CORP.; ) <br> and ) <br> PEOPLES SECURITY BANK & TRUST CO.; ) <br> ) <br> Defendants. ) <br> ) | Civ. Action No. 2:20-cv-714 <br><br> CLASS ACTION COMPLAINT <br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

**ORIGINAL COMPLAINT**

Plaintiff HallockShannon, PC (hereinafter "HallockShannon" or "Plaintiff") complains of Defendants Citizens & Northern Corp., Citizens & Northern Bank; FNCB Bancorp, Inc., First National Community Bank; F.N.B. Corp., First National Bank of Pennsylvania; Honat Bancorp, Honesdale National Bank; Peoples Financial Services Corp., and Peoples Security Bank & Trust Company (hereinafter "Defendants") and seek to obtain monies owed as a result of Defendants' wrongful conduct. For this class action complaint, Plaintiff alleges as follows based upon its knowledge and upon information and belief, including investigation conducted by its attorneys.

1

## PARTIES

1.     Plaintiff, HallockShannon is a Pennsylvania professional corporation, organized and authorized to do business, and doing business, in the Commonwealth of Pennsylvania since May 2016. HallockShannon was formed to help its clients with their accounting and business needs. Principal, Kevin J. Hallock, is a licensed CPA in good standing since 2008.  HallockShannon's offices are located in Wyalusing and Tunkhannock, Pennsylvania.

2.     Upon information and belief, at all relevant times, Defendant Citizens & Northern Corp. ("Citizens") is a Pennsylvania corporation and the holding company of Citizens & Northern Bank. Citizens is headquartered in Wellsboro, Pennsylvania. Through its subsidiaries, Citizens conducts substantial business within this District.

3.     Upon information and belief, at all relevant times, Defendant Citizens & Northern Bank ("Citizens Bank") is a subsidiary of Citizens.  Citizens Bank is a full-service financial institution. Citizens Bank is headquartered in Wellsboro, Pennsylvania, and conducts substantial business within this District.

4.     Upon information and belief, at all relevant times, Defendant FNCB Bancorp, Inc. ("FNCB Bancorp") is a Pennsylvania corporation and is the holding company of First National Community Bank. FNCB Bancorp is headquartered in Dunmore, Pennsylvania and through its subsidiaries, conducts substantial business within this District.

5.     Upon information and belief, at all relevant times, Defendant First National Community Bank ("FNCB") is a subsidiary of FNCB Bancorp. FNCB is an independent community bank that assists businesses, individuals, and investors in achieving their financial goals. FNCB is headquartered in Dunmore, Pennsylvania, and conducts substantial business within this District.

6.     Upon information and belief, at all relevant times, Defendant F.N.B. Corp. ("FNB") is a Pennsylvania corporation and is a diversified financial services corporation and the holding

2

company of First National Bank of Pennsylvania. FNB is headquartered in Pittsburgh, Pennsylvania and through its subsidiaries, conducts substantial business within this District.

7. Upon information and belief, at all relevant times, Defendant First National Bank of Pennsylvania ("FNBP") is a subsidiary of FNB. FNBP provides banking services, including personal loans, residential mortgages, commercial leasing, investments, insurance, business credit, wealth management, investment real estate financing, and international banking services. FNBP is headquartered in Pittsburgh, Pennsylvania and conducts substantial business in this District.

8. Upon information and belief, at all relevant times, Defendant Honat Bancorp ("Honat") is a Pennsylvania corporation and the parent company of its wholly owned subsidiary Honesdale National Bank. Honat is headquartered in Honesdale, Pennsylvania. Through its subsidiaries, Honat conducts substantial business within this District.

9. Upon information and belief, at all relevant times, Defendant Honesdale National Bank ("Honesdale") is a subsidiary of Honat. Honesdale is an independent community bank that offers modern and comprehensive banking solutions. Honesdale is headquartered in Honesdale, Pennsylvania, and conducts substantial business within this District.

10. Upon information and belief, at all relevant times, Defendant Peoples Financial Services Corp. ("Peoples Corp") is a Pennsylvania corporation and parent company of Peoples Security Bank & Trust Co. Peoples Corp is headquartered in Scranton, Pennsylvania. Through its subsidiaries, Peoples Corp conducts substantial business within this District.

11. Upon information and belief, at all relevant times, Defendant Peoples Security Bank & Trust Co. ("Peoples Bank") is a subsidiary of People Corp. Peoples Bank is an independent community bank located in Pennsylvania. Peoples Bank is headquartered in Scranton, Pennsylvania, and conducts substantial business within this District.

12. In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

13. The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

14. This Court has personal jurisdiction over Defendants because Defendants are residents of Pennsylvania, do business in Pennsylvania, and/or a substantial number of the events giving rise to the claims alleged herein took place in Pennsylvania.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that the Plaintiff, acting as an Agent under the SBA regulations, assisted clients with applications for PPP loans and Defendants marketed and/or promoted and/or took applications for the PPP loans in this District.

## FACTUAL ALLEGATIONS

A. **Background**

16. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, also known as COVID-19.

17. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-

19 outbreak to be a "public health emergency of international concern."

18. On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

19. On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

20. The Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

21. On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and its Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

22. As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the "Paycheck Protection Program" ("PPP"). The PPP provides small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage

5

forgivable if utilized to retain employees and fund payrolls. The SBA backs the loans. The loans are administered by Treasury, backed by the Federal Government, but funded by private lenders ("Lenders"), including banks and financial services firms.

23. Without the work performed by Plaintiff and Class Members, the CARES Act violates the United States Senate's legislative intent. The Senate requested Treasury to "issue guidance to lenders and agents to ensure that the … loans <u>prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years</u>."[1]

24. The Treasury announced on April 3, 2020, that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[2]

25. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

26. The Treasury's PPP Information Sheet Lenders (the "PPP ISL")[3], consistent with the SBA PPP Final Rule[4] (collectively, the "SBA Regulations"), provides that Lenders will be compensated for processing fees based on the balance of the financing at the time of final disbursement. Specifically, the SBA will pay Lenders fees for processing PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

---

[1] CARES Act, PL 116-136, March 27, 2020, 134 Stat 281. (emphasis added)
[2] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf
[3] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf
[4] https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and
- One percent (1%) for loans of at least $2,000,000.[5]

27. The SBA Regulations not only include compensation for Lenders, but also agents. Under the PPP ISL, "[a]n 'Agent' is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
- A loan broker; or,
- Any other individual or entity representing an applicant by conducting business with the SBA."[6]

28. Additionally, the SBA Regulations provide that "Agent fees will be paid out of the fees the lender receives from the SBA."[7]  This mandatory language makes it patently clear that the lender *will* pay the agent.

29. Further, Agents may not collect any fees from the applicant.[8]

30. "The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan…"[9] is as follows (the "Agent Fees"):

- One percent (1%) for loans of not more than $350,000;
- 0.50% for loans of more than $350,000 and less than $2 million; and

---

[5] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf
[6] *Id.*
[7] *Supra,* note 4.
[8] *Id.*
[9] *Id.*

7

- 0.25% for loans of at least $2 million.

31. The SBA Regulations establish limits on Agent Fees. The SBA Regulations and Treasury Guidance determined that the Agent Fees set forth above are reasonable given the application requirements and the fees that Lenders receive for making PPP loans.

32. Within this context, Defendants served as the intermediary between small businesses and federal funds. Plaintiff served as the Agent for the small businesses applying for the PPP loans to be lent by the Defendants and backed by the full faith and credit of the federal government.

33. Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses. However, Defendants failed to pay the required compensation to Plaintiff (the "Agents"), that facilitated the loan process between Lenders and applicants as required by the SBA Regulations.

34. Defendants have either failed and refused to pay, or are willing to pay only a partial percentage of the monies owed to Plaintiff.

B. **Plaintiff Assists Clients With Applying for PPP Loans Under the CARES ACT**

35. On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would significantly impact its clients' businesses, sought to obtain PPP loans through various Lenders on behalf of its clients.

36. In or about April 2020, Plaintiff assisted clients in the gathering and analysis of their documents, as well as the calculation and preparation of loan applications.

37. Based on the SBA Regulations, Plaintiff understood that <u>it was not allowed to charge its clients a fee</u> relating to the application process. The Agents were <u>only</u> permitted to receive compensation from the Agents' share of the $20 billion in fees the Federal Government paid the Lenders for originating the PPP loans.

38. To fill out the Applications, Plaintiff assisted clients in gathering the required

8

information and filling out the applications, including the following documents, where applicable or necessary:

    a. Loan Calculator Spreadsheet;
    b. SBA Form 2483 – Each Owner 20% or more or Officer;
    c. Addendum A: Affiliates – Each Owner 20% or more must complete;
    d. Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");
    e. Certificate of Beneficial Ownership Interest – Each Owner 20% or more must complete;
    f. Driver's License for each 20% or more owner;
    g. Articles of Incorporation or Articles of Organization;
    h. 2019 IRS/State Payroll Forms: 940 or all four quarterly 941;
    i. 2019 Payroll Summary Report by Employee;
    j. 2019 Health Insurance Premium Paid – Each monthly statement or year-end summary;
    k. 2019 Retirement Matching Plan Paid – Each monthly statement or year-end summary;
    l. 2020 1st QTR 941 Form;
    m. January 2020 Payroll Summary by Employee;
    n. February 2020 Payroll Summary by Employee;
    o. March 2020 Payroll Summary by Employee;
    p. Health Insurance Premium Paid – January, February, and March 2020;
    q. Retirement Matching Plan Paid – January, February, and March 2020;
    r. Wiring Instruction; and,
    s. Copy of most recent bank statement (collectively, (a) – (r) above are part of the "Application").

39. Plaintiff believed in good faith that it would receive the Agent Fees from the Lenders upon funding of each of its clients' loans under the PPP, as required by the SBA Regulations.

40. Plaintiff demanded Agent Fees from Defendants for assisting clients with PPP loans. Plaintiff was denied payment of Agent Fees from Defendants.

41. Upon information and belief, Defendants did not comply with the SBA Regulations in distributing PPP funds. Instead, Defendants either retained the Agent Fees or informed Agents that they would be paid only a small percentage of the mandated Agent Fees.

42. As a result of Defendants' unlawful actions, Plaintiff has suffered financial harm by being deprived of the statutorily mandated compensation for the professional services it provided in connection with its clients' PPP loan applications.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

43. As noted above, Plaintiff brings this action on behalf of itself and all others similarly situated as a state and nationwide Class, defined below.

44. Plaintiff seeks to represent a Class composed of and defined as follows:

   a. All Agents as that term is defined by the SBA Regulations that facilitated small businesses to receive a loan under the PPP, *i.e.*, met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020, and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding.

45. *Numerosity:* The Class is composed of thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

46. *Commonality:* There is a commonality in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

   a. Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

   b. Did Defendants comply with their legal obligations under the terms of the CARES Act as a lender of the PPP funds?

   c. Did Defendants fail to compensate Agents who facilitated PPP loans to the detriment of the Class?

   d. Did Defendants prioritize their origination own fees over abiding by the CARES Act and

       PPP specifications?

   e. Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, *i.e.*, that the Agents were not receiving compensation when assisting applicants with PPP loan process?

   f. Did Defendants actively conceal a material fact or facts from the Plaintiff, *i.e.*, that the Agents were not going to receive their earned fees from assisting with the Applications?

   g. Whether Defendants' conduct, as alleged herein, was intentional and knowing?

   h. Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

   i. Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act; and,

   j. Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

47.   *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

48.   *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all

Class Members. Plaintiff and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

49. *Adequacy*: Plaintiff is an adequate representatives of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

50. *Ascertainability*: Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and federally-mandated recordkeeping practices. Defendants have one or more databases through which all of the borrowers may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (*i.e.*, the Agent for the borrower) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## CAUSES OF ACTION
### (on behalf of the Class and against all Defendants)

55. Plaintiff asserts all causes of action on behalf of itself and other Class Members as Agents as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing

an applicant by conducting business with the SBA ("PPP Agents").

## COUNT I

### Declaratory Relief

56. Plaintiff re-alleges and incorporates by reference all allegations contained in all paragraphs above, as though set forth verbatim herein at this point.

57. The purpose of a declaratory judgment is to declare the rights of litigants.

58. Plaintiff assisted its clients with the application process. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, they kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

59. An actual controversy has arisen between Plaintiff and Defendants regarding payment of the Agent Fees. Upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff or claim that only a percentage of the Agent Fees are owed.

60. Plaintiff and Class Members seek a declaration that: (i) Plaintiff is entitled to its Agent Fees as outlined in the SBA Regulations; and, (ii) Defendants are and were required to pay Plaintiff its Agent Fees out of the fees Defendants received from the SBA.

## COUNT II

### Conversion

61. Plaintiff re-alleges and incorporates by reference all allegations contained in all paragraphs above, as though set forth verbatim herein at this point.

62. Conversion under Pennsylvania law is the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification.

63. Plaintiff has an immediate right to possession of its agent fees, which has been denied by Defendants. Accordingly, conversion has occurred.

## COUNT III

**Misappropriation**

64. Plaintiff re-alleges and incorporates by reference all allegations contained in all paragraphs above, as though set forth verbatim herein at this point.

65. A misappropriation of property claim refers to the application of another's property or money dishonestly to one's own use.

66. In Pennsylvania, a misappropriation claim requires that: (1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that thing as a kind of property right; (2) the defendant has appropriated the thing at little or no cost, such that the court can characterize defendant's own actions as reaping where it has not sown; and (3) the defendant injured plaintiff by the misappropriation.

67. This is exactly what has happened to Plaintiff here. Plaintiff invested time, effort, and money, which have been wrongfully appropriated by Defendants.

**COUNT IV**

**Unjust Enrichment**

68. Plaintiff re-alleges and incorporates by reference all allegations contained in all paragraphs above, as though set forth verbatim herein at this point.

69. Under Pennsylvania law, a claim of unjust enrichment must allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit.

70. To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.

71. Defendants have been conferred a benefit by Plaintiff, which Defendants appreciated while accepting the benefits. Accordingly it is inequitable for Defendants to retain the benefit rightfully belonging to Plaintiff.

72. Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the federal government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members.

73. Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff.

74. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seeks restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

## COUNT V

## Quantum Meruit

75. Plaintiff re-alleges and incorporates by reference all allegations contained in all paragraphs above, as though set forth verbatim herein at this point.

76. *Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services.

77. Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred.

78. In this instance there can be no doubt that Plaintiff provided valuable services for which restitution is owed. Accordingly, the law implies a contract therefor.

## PUNITIVE DAMAGES

79. Punitive damages are available in tort actions when the plaintiff has established that the defendant has acted in an outrageous fashion due to either 'the defendant's evil motive or his reckless

indifference to the rights of others. Such conduct has also been described as that which is willful, wanton, or reckless.

80. Here, the Defendants have willfully violated clear statutory and regulatory mandates in support of their own benefit, and to the detriment of Plaintiff. Accordingly, Plaintiff is entitled to, and seeks, an award of punitive damages.

81. Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays that Defendants be cited to appear and answer, and that the honorable Court render judgment in favor of the Plaintiff, *to wit*:

1. For an order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;
2. For an order declaring that (i) Plaintiff is entitled to its Agent Fees as outlined in the SBA Regulations; (ii) Defendants are and were required to pay Plaintiff its Agent Fees out of the fees Defendants received from the SBA; and, (iii) Defendants' actions were unlawful;
3. For an order requiring that approximately 19.14% of all administrative fees paid to all Defendants to be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan;
4. For equitable relief to Plaintiff and Class Members;
5. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members, and equitable relief including disgorgement and all other available relief allowed by law;
6. For an award of punitive damages as allowed by law;
7. For reasonable attorneys' fees as allowed by law;
8. For expenses and costs of court as allowed by law;
9. For pre and post-judgment interest as allowed by law; and
10. For such other and further relief, both general and special, at law and in equity, to which Plaintiffs and Class Members may be justly entitled—as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

Dated: May 15, 2020

Respectfully submitted,

*/s/Brett D. Stecker*
Brett D. Stecker (PA 86242)
**SHUMAN, GLENN & STECKER**
326 W. Lancaster Avenue
Ardmore, PA 19003
Telephone: (303) 861-3003
brett@shumanlawfirm.com

Kip B. Shuman
**SHUMAN, GLENN & STECKER**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (303) 861-3003
kip@shumanlawfirm.com

Rusty E. Glenn
**SHUMAN, GLENN & STECKER**
600 17th Street, Ste. 2800 South
Denver, CO 80202
Telephone: (303) 861-3003
rusty@shumanlawfirm.com

Mark J. Geragos
Ben J. Meiselas
Matthew M. Hoesly
**GERAGOS & GERAGOS, P.C.**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900
mark@geragos.com
ben@geragos.com
mhoesly@geragos.com

Brian Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com

Michael E. Adler
**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127

17

Calabasas, CA 91302
Telephone: (818) 532-2833
meadler@graylawinc.com

Harmeet K. Dhillon
Nitoj P. Singh
**DHILLON LAW GROUP INC**.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
harmeet@dhillonlaw.com
nsingn@dhillionlaw.com

*Counsel for Plaintiff*